IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JAMES A. COX and CINDY S. COX, on behalf of themselves and all other similarly situated,

        Plaintiffs,

vs.

VIACOM INTERNATIONAL, INC., a Delaware Corporation, Successor in Interest to Gulf + Western Inc. & Paramount Communications Inc., and THE BANK OF NEW YORK COMPANY, INC., a New York corporation,

        Defendants.

Case No. 02-1598-KI

OPINION

Robert J. McGaughey
111 S. W. Columbia Street, Suite 1000
Portland, Oregon 97201-5855

Helen T. Dziuba
207 Evergreen Road
Lake Oswego, Oregon 97034-3120

      Attorneys for Plaintiffs

Page 1 - OPINION

Steven K. Blackhurst
Lori Irish Bauman
Gregg D. Johnson
Ater Wynne LLP
222 S. W. Columbia, Suite 1800
Portland, Oregon 97201-6618

    Attorneys for Defendants

KING, Judge:

This action concerns a debenture plaintiffs held for which defendant Viacom International, Inc. ("Viacom") was the obligor and defendant The Bank of New York Company, Inc. ("Bank") was the trustee. The terms of the debenture allowed Viacom to redeem it as early as August 1, 2002, if particular notice requirements were met. Plaintiffs allege that Viacom and the Bank made a false statement in the Notice of Redemption concerning the length of the notice period, thus violating several securities laws by causing plaintiffs to surrender the debenture when there was no obligation to do so.

Before the court is Plaintiffs' Second Amended Motion for Class Certification and for Appointment as Lead Plaintiffs (#75). For the reasons below, I deny the motion.

**FACTS**

Plaintiffs allege the following:

Viacom is the successor obligor on 8 1/4% Senior Debentures due August 1, 2022 ("Debentures"), in the aggregate principal amount of approximately $250 million. The Bank serves as trustee for the holders of the Debentures. Under the terms of the Debentures, Viacom could redeem them before August 1, 2022, if it mailed a Notice of Redemption to the holders of

the Debentures not less than 30 and not more than 60 days prior to the redemption date. The earliest Viacom could redeem the Debentures was August 1, 2002.

On or after July 3, 2002, the Bank mailed a Notice of Redemption ("Notice") to the holders, purporting to redeem the Debentures on August 1, 2002. Because the redemption date was less than 30 days after the mailing date, the Notice was not legally sufficient to redeem the Debentures. The Notice contained a material misstatement that it was mailed on July 1. Relying on the misrepresentation, plaintiffs and others surrendered their Debentures, foregoing additional interest.

Discovery brought forward additional relevant facts:

The Debentures have 62 individual legal owners, who apparently live in 46 households, and thousands of beneficial owners whose Debentures are held in street name by Depository Trust & Clearing Corporation ("DTCC"), which is in the business of serving as legal owner on behalf of large numbers of beneficial owners.[1] Legal owners, but not beneficial owners, are considered holders of the Debenture. Plaintiffs James A. and Cindy S. Cox are legal owners of $10,000 of Debentures. DTCC is the legal owner of 98.58% of the outstanding Debentures. The remaining 1.42% of the Debentures are held by holders other than DTCC in amounts between $4,000 and $1,000,000.

Sherma Thomas is employed by the Bank as a trust associate in its Corporate Trust Department. Thomas mailed the same Notice to each holder and processed all 47 envelopes in the same way. The Notice stated that it was mailed pursuant to Section 4.04 of the Indenture

---

[1] Defendants note that the Securities Register contained 47 Holders, including DTCC. Any discrepancy in the number of individual legal owners between 46 and 62 is too small to affect this analysis.

PAGE 3 - OPINION

(which presumably gives the notice requirements). Plaintiffs allege that this statement in the Notice is untrue or misleading based on the following events.

Thomas placed the Notices in unsealed, unstamped, envelopes, put a rubber band around them, and put the envelopes in a department out-basket on Friday evening, June 28, 2002. The envelopes were picked up from the out-basket on Monday morning, July 1, 2002.

At 12:28 PM on that Monday, Thomas faxed a copy of the Notice to DTCC pursuant to an agreement between the Bank and DTCC. DTCC received the fax a minute later and began processing the redemption. Thomas then filled out a form affidavit confirming:

On 7/1/2002, I caused to be mailed:

(1) **NOTICE OF FULL REDEMPTION**

to each registred [sic] holder of the Company, shown at the close of business on June 28, 2002, on the record of such holders maintained by The Bank.

The item described above was enclosed and securely sealed in post-paid envelopes addressed to such holders at their respective addresses as shown on said record and were deposited to be mailed by the Class of Mail specified above, in the United States Postal Service located at North Jersey Facility, 850 Newark Turnpike, Kearny, NJ 07099.

McGaughey Decl. Ex. 3.

On the same day, July 1, the envelopes went to the Bank's Secaucus, New Jersey, mail room which put a postage meter date of "JUL 02, '02" on all of the envelopes because that was the day the Bank expected to turn the envelopes over to the US Postal Service. The envelopes remained in the Bank's mail room until around 10:00 PM on July 1 and then were transported to CMS Presort ("CMS"), a third-party commercial presort facility in Brooklyn, New York. CMS sorted the envelopes and added zip code bar coding. At some point, CMS delivered the envelopes to a "detached mail unit" of the US Postal Service that is physically located in the

PAGE 4 - OPINION

CMS facility in Brooklyn. CMS had an arrangement with the Bank to deliver the mail to this particular US Postal Service facility on the day it was postmarked.

The parties have not been able to determine whether the presort facility or the US Postal Service then added the coding "7/3/2002 Brooklyn, NY."

When Cox[2] received his Notice, he saw that it was dated July 1 but the envelope was marked both July 2 and July 3. He sent his Debenture to the Bank with a letter stating that he did not waive his claim for continuing interest. Cox identified himself as an attorney, asserted that the Notice may not be timely, and suggested that a class action lawsuit might be appropriate. Cox also discussed the issue with Thomas's supervisor, Julie Salovitch-Miller, received a copy of Thomas' affidavit from Salovitch-Miller, and exchanged email with her. Cox demanded a $5,000 payment in exchange for a confidentiality agreement, which he proposed because there might be other people in the same situation. Cox threatened the class action to let the Bank know that he was serious about his request. Cox also contacted the US Postal Service to obtain documentation for the mailing.

After concluding that the Notice was timely, the Bank released the funds to the holders. When Cox received his check, he sent a letter to the Bank returning the check. Barbara Jo Lubitz, an in-house attorney for the Bank, sent Cox a letter again asserting that the redemption was effective.

No other holder of a Debenture has communicated with the Bank objecting to the redemption.

---

[2] Because only James Cox communicated with the Bank, I will refer to him as Cox for the rest of the opinion.

## LEGAL STANDARDS

Federal Rule Civil Procedure 23 provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In deciding whether to certify a class, the court may need to probe behind the pleadings and should make whatever factual and legal inquiries necessary under Rule 23. Newton v.

Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 166 (3rd Cir. 2001). "Although some inquiry into the substance of a case may be necessary . . . it is improper to advance a decision on the merits to the class certification stage." Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003) (internal quotation omitted).

## DISCUSSION

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(a) and 23(b)(3) consisting of all legal and beneficial owners of the Debentures who sold the Debentures which are the subject of this lawsuit pursuant to the Notice of Redemption dated July 1, 2002.

Plaintiffs contend that all of the misrepresentations and omissions alleged in the Amended Complaint relate to the Notice. Since the same Notice was sent to all class members in the same manner, plaintiffs argue that the identical question of truth or falsity is presented for each class member. Likewise, plaintiffs argue that proof of defendants' scienter is common to all class members because it is dependent on the mailing of the Notice.

Defendants object to the certification of a class.

I.  Rule 23(a) Prerequisites

   A.  Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of all members is impracticable.

Although plaintiffs do not know the exact number of beneficial owners, it is estimated that DTCC legally owns the vast majority of the Debentures on behalf of thousands of beneficial owners. This is adequate to satisfy the numerosity requirement if DTCC and the beneficial holders are appropriate class members.

Defendants do not challenge the numerosity element.

B.  Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class. It is construed permissively so that all questions of law and fact need not be common to satisfy the requirement. Shared legal issues with divergent factual predicates is sufficient. Likewise, a common core of salient facts coupled with disparate legal remedies satisfies the requirement. Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

Plaintiffs argue that classes are routinely certified if the issue is whether a form or standardized notice was lawful or adequate. See, e.g., Wilkerson v. Bowman, 200 F.R.D. 605, 609 (N.D. Ill. 2001) (class members received the same standard form debt collection letter). Here, plaintiffs characterize the common issues as whether the Notice and its processing and mailing by Thomas complied with the contractual requirements of the Debentures. Plaintiffs also contend that if they prevail, the computation of damages for all Debenture owners is the same and is based on an easy mathematical calculation.

Defendants do not challenge the commonality element.

C.  Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The commonality and typicality requirements tend to merge. Representative claims are typical if they are "reasonably coextensive with those of absent class members." Staton, 327 F.3d at 957. The representative claims need not be identical or even substantially identical to the claims of the absent class members. Id. Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member

makes similar legal arguments to prove defendant's liability." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (internal quotation omitted). Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (in securities fraud action, proposed class representative with extensive experience in prior securities litigation who had a practice of buying a minimal number of shares in various companies, including defendant, fails to satisfy typicality requirement because his reliance on the integrity of the market is likely to be a major focus of the litigation as a defense unique to him).

Plaintiffs argue that their claim is the same as the rest of the class, namely, that they were damaged by the forced premature surrender of the Debenture pursuant to defective notice. They argue that defendants ignore the unifying characteristics of the plaintiff class, that the same Notice was mailed by the same person in the same manner to all purported class members. Plaintiffs contend that the claims do not need to be identical.

Defendants argue that plaintiffs base their claim largely on representations made only to Cox. Defendants point to the allegations of misrepresentations concerning Cox's receipt of Thomas's affidavit, Cox's receipt of letters from Salovitch-Miller and Lubitz, and his other emails and phone calls to the Bank. The other holders only received the Notice. Plaintiffs argue that the subsequent representations made only to Cox do not alter the misrepresentation in the Notice that is the basis for plaintiffs' claims.

A review of the Amended Complaint makes it clear that plaintiffs intend to rely on the alleged misrepresentations that were made only to Cox, and not to any other class members, to prove scienter on the part of defendants. Although each class member allegedly suffered the same injury, an early surrender of the Debenture, proof of a violation of the securities law will

rely on alleged misrepresentations only made to Cox and not just on the Notice itself. An additional complication is the fax notice sent to and relied upon by DTC, allowing defendants to argue that the beneficial owners, through DTC, did not rely on any misrepresentation in the Notice. Consequently, the claims of the other class members do not arise from the same course of events as the claim of plaintiffs. Further, each class member will not be making the same legal arguments as plaintiffs.

In summary, I conclude that plaintiffs' claims are not typical of the claims of the absent class members.

### D. Adequacy of Representation

Rule 23(a)(4) requires the representative parties to fairly and adequately protect the interests of the class. There is a two part inquiry: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton, 327 F.3d at 957. "Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Molski v. Gleich, 318 F.3d 937, 955 (9th Cir. 2003) (internal quotation omitted).

Plaintiffs rely on their counsels' extensive experience in class actions and securities law and the fact that plaintiffs, together with their counsel, have prosecuted the action by pursuing a successful appeal.

Defendants contend that Cox would not be an adequate class representative because he attempted to negotiate a settlement for himself at the expense of class members by threatening a

class action but offering to sign a confidentiality agreement. Plaintiffs argue that pre-litigation effort to settle a claim are not contrary to Rule 23, which only prohibits compromise of claims or attempts to settle after filing.

Defendants do not cite any authority prohibiting a class representative from attempting to settle a claim prior to filing a case. On the contrary, settlement attempts in non-class litigation are generally lauded. Cox's conduct does not show a conflict of interest between plaintiffs and the other class members.

Defendants alternatively contend that plaintiffs would not be adequate class representatives because they failed to comply with the Private Securities Litigation Reform Act requirement to publish notice of their lawsuit within 20 days of filing suit. Plaintiffs did not publish notice until February 28, 2005, more than two years after the lawsuit was filed. Defendants also note that no one had moved the court to be appointed lead plaintiff in the action. Defendants argue that the individual holders with much larger financial stakes than plaintiffs were denied an opportunity to manage the litigation because they had no notice of it and could not come forward.

Plaintiffs rectified the lead plaintiff problem by amending their motion for class certification to make the request. They also contend that they are presumptively the most adequate lead plaintiffs by virtue of filing the complaint in this case. Plaintiffs argue that the late notice was filed soon enough to allow others to apply to be lead plaintiff if they so desire. Plaintiffs note that most courts have allowed would-be lead plaintiffs to cure defects in the notice.

I am troubled by the fact that plaintiffs and their counsel did not comply with two of the PSLRA procedural requirements. Both problems have been rectified, however, and no other party has approached the court seeking to fill the roles, including any owners with larger financial stakes. Plaintiffs and their counsel have shown their willingness to vigorously prosecute this case by pursuing a successful appeal. I believe their willingness overcomes the procedural problems and find that plaintiffs meet the adequacy of representation test.

## II. Rule 23(b) Alternatives

In addition to meeting the requirements of Rule 23(a), a proposed class action must fit within one of the three subdivisions of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3).

### A. Predominance

Plaintiffs contend that the predominance requirement is satisfied because several class-wide issues dominate the litigation: (1) did the Bank timely mail the Notice so that the holders had to surrender their Debentures; (2) did defendants act with the requisite scienter; (3) if the Notice was untimely and defendants acted with scienter, what is the measure of damages for the Debenture owners; and (4) is there control person liability for Viacom. Plaintiffs also note that their claims rely on a uniform body of federal securities law.

Defendants contend that class treatment is inappropriate because the common issues do not predominate over two individual issues. The first is the date of mailing the notice to each purported class member, which is relevant to whether an allegedly false statement was in fact made to each individually. Defendants concede that discovery so far shows the Notices traveled

together to CMS but argue that it is unclear what happened to them at CMS when they were co-mingled with mail from other CMS customers.

Plaintiffs do not squarely meet this argument but instead focus on the fact that Thomas handled all Notices in the same manner and placed them all in the out-box rubberbanded together. Although that is true, it is possible that they separated at CMS and different envelopes were delivered by CMS to the US Postal Service at different times. Thus, individual mailing times may need to be proven.

The second issue is even more problematic: whether each purported class member reasonably relied on the alleged misrepresentation concerning the mailing date or, like Cox, saw the postmark on the envelope and did not rely on the statement in the Notice. Similarly, defendants note that DTCC began processing the redemption after receiving the faxed Notice and did not wait for the mailed Notice containing the alleged misrepresentation. Defendants contend that this case differs from the typical securities fraud case in which the securities at issue are publicly traded and the alleged misrepresentation had an impact on the market price paid by all defrauded plaintiffs, thus allowing plaintiffs a "fraud on the market" presumption so individual proof of reliance is unnecessary.

The Supreme Court approved the use in a 10b-5 case of a rebuttable presumption of reliance supported by the fraud-on-the-market theory in <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 241-251, 108 S. Ct. 978 (1988) (company publicly and falsely denied that merger negotiations were taking place). The court noted that the price of company stock is determined by the available material information about the company and its business. Thus, even if purchasers of the stock do not directly rely on the misrepresentations, they are defrauded. <u>Id.</u> at 241-42.

Plaintiffs contend that their proposed class definition is limited to those who relied on the Notice. Further, plaintiffs argue that in this circuit, a Rule 10b-5 class action may be established without proof of individual reliance and causation.

Plaintiffs cite Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976), in which the plaintiffs purchased stock based on a series of allegedly false financial reports and lost money when the company announced the true financial condition. The court held that positive proof of reliance is not a prerequisite to recovery when the allegations are primarily of a failure to disclose. The court further held that proof of subject reliance on particular misrepresentations is unnecessary to establish a 10b-5 claim for a deception inflating the price of stock traded in a public market. Id. at 905-06. The situation before me is quite different because it does not involve publicly traded stock and is not primarily a failure to disclose. See also Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999) (the Affiliated Ute presumption, for omissions of material fact allegedly violating 10b-5, should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions), cert. denied, 528 U.S. 1124 (2000).

Plaintiffs have not convinced me that any of these presumptions of reliance apply to the allegations in the Amended Complaint. No market is involved here. There are also no omissions. Reliance will have to be proven by each holder. Thus, I conclude that the predominance requirement is not satisfied because common questions of law or fact do not predominate over individual questions.

    B.    <u>Superiority</u>

Rule 23(b)(3) lists four factors to be considered when analyzing the superiority of a class action over other methods of adjudication:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs argue that the factors all weigh in favor of determining that a class action is the superior method to achieve a fair and efficient adjudication. Plaintiffs contend that it is not economically feasible for small investors to pursue individual claims. Plaintiffs are unaware of other pending litigation concerning this issue. Plaintiffs note that this district has presided over other class actions and that federal court is an especially apt forum for a securities action. Finally, plaintiffs contend that the management of the case, one based on very simple factual issues, should present no difficulties that weigh against class certification.

Defendants contend that a class action is not superior because of the individual issues noted above. They note that if the holders with much larger investments were interested in pursuing the case individually, they would have done so.

As analyzed above, I agree with defendants that the individual issues create a problem with prosecuting this as a class action. I also acknowledge plaintiffs' point that it is not economically feasible for numerous investors, particularly the smaller investors, to pursue individual claims. It is also possible that large investors would be willing to be part of a class action but do not want to make the effort to pursue the case individually. Except for the

individual issues predominating, I agree with plaintiffs that a class action would be superior to other methods of adjudicating the issue. The predominance of individual issues, however, is an insurmountable problem.

## CONCLUSION

In summary, I conclude that plaintiffs' claims are not typical and that individual issues predominate over common questions. A class action may not be maintained. Accordingly, Plaintiffs' Second Amended Motion for Class Certification and for Appointment as Lead Plaintiffs (#75) is denied.

Dated this ____6th____ day of July, 2005.

                                          /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge